IN THE UNITED STATES OF DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DANIEL WILLIAM COOK and
YOLANDA TERESA COOK,

        Debtors.

**DANIEL W. And YOLANDA T.**         CIV. NO. 09-803 JCH/CEG
**COOK individually and as Debtors in
Possession**,
        Plaintiffs,

v.

**EASTERN SAVINGS BANK, FSB, and
KRISTA TRICARICO, Special Master.**

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Eastern Savings Bank, FSB's ("ESB") *Motion for Summary Judgment*, filed February 21, 2011 [Doc. 42]. After full consideration of the parties' briefs, the summary-judgment record, and the applicable law, the Court finds that the motion is well-taken and should be granted.

**I. APPLICABLE LEGAL STANDARDS.**

> Rule 56 has recently been amended, effective December 1, 2010. The summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and there was one word change from the previous version-genuine "issue" became genuine "dispute." Fed. R. Civ. P. 56 advisory committee note (2010 Amendments). But the "standard for granting summary judgment remains unchanged." *Id*.

*Lyon v. Aguilar*, No. 10-2192, 2011 WL 488749, *1 (10 Feb. 11, 2011). In addition, the new subsection (c) "establishe[d] a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules," including

1

ways to support an assertion of undisputed fact and authorizing the court "to consider the fact undisputed for purposes of the motion" if the nonmoving party fails "to properly address another party's assertion of fact." FED. R. CIV. P. 56(c) and (e) and corresponding Advisory Committee Notes to the 2010 Amendments.

As noted above, the standard for granting summary judgment remains the same: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). The Supreme Court has long stated that, "[i]n our view, the plain language of Rule 56(c) [now codified in Rule 56(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.   UNDISPUTED MATERIAL FACTS

After this District's Bankruptcy Court proposed dismissing several counts in Cook's Second Amended Complaint, and this Court adopted that recommendation, there remain only four counts against ESB: (I) fraud and misrepresentation, (II) malicious abuse of process, (IV) violations of the New Mexico Unfair Trade Practices Act; and (VII) prima facie tort. *See In re Cook*, Case No. 11-04017704 SA, Adv. No. 04-1246 S, Doc. 50; *and see* Doc. 12 (Joint Status Report), Stips. 24-26. The following undisputed facts relate to the events giving rise to Cook's Second Amended Complaint.

1. ESB instituted a foreclosure action in the Second Judicial District Court in New Mexico as Case No. D-202-CV-2002-4230 on May 21, 2001 against Daniel and Yolanda Cook for the property located at 5101 Eakes Road NW, Albuquerque, New Mexico. Doc. 12, Stips. 1, 2.

2. On October 1, 2003 judgment was entered in Case No. D-202-CV-2002-4230 in favor of ESB in the foreclosure action. *See id.*, Stip. 1.

3. ESB was the high bidder and therefore purchased the property at the foreclosure sale on December 11, 2003. *See id.*, Stip. 3.

4. An Order Approving Sale and Special Master's Report was entered on December 22, 2003 (the "Sale Order"). Doc. 42, Ex. A.

5. The purchase price at the foreclosure sale was $1,123,939.01. *See id.,* Ex. B.

6. The Special Master deeded the property to ESB. *See id.,* Ex. C.

7. ESB deeded the property to Spica Properties, its wholly owned subsidiary, by a deed recorded on January 5, 2004 as Document No. 2004000793 in the real estate records of Bernalillo County, without otherwise informing the Cooks of the deed transfer, and they were unaware of the transfer until "early 2005". *See id.,* Ex. D; Doc. 42 at 1-2; Doc. 43, Ex. 1 at ¶¶ 11, 31.

8. Following the entry of the judgment in the foreclosure case the Cooks moved to set aside the judgment, stay enforcement of the judgment and extend the redemption period.

9. Judge Geraldine Rivera denied the Cook's request to alter or amend the judgment and their request to stay execution and any proceedings to enforce the judgment, but she granted in part the request to extend the redemption period. *See* Doc. 42, Exs. E, H.

10. Pursuant to Judge Rivera's Order, by 5:00 p.m. on the last day of the redemption period specified in the judgment, the Cooks could pay $10,703.40 to the purchaser at sale to extend the redemption period an additional one month. *See id. ,* Ex. E.

11. The redemption period was ultimately extended through October 22, 2004 because of an agreement between ESB and the Cooks. Doc. 12, Stip. 5; Doc. 42, Exs. F-1, F-2, F-3.

12. Pursuant to the judgment, applicable state law and the agreements extending the

redemption period, the Cooks could have redeemed the Property either by paying the redemption price at the foreclosure sale to ESB or Spica, or they could have paid the redemption price to the Second Judicial District Court registry and filed a petition for redemption. *See* N.M.S.A. 1978 §39-5-18 (A).

13. On October 21, 2004, a day before the right to redeem the Property expired, the Cooks filed bankruptcy in the United States Bankruptcy Court for the District of New Mexico as Cause No. 11-04-17704. Doc. 12, Stip. 6.

14. The bankruptcy filing extended the Cooks' redemption period by 60 days, but the Cooks did not obtain any further extensions of the redemption period.. Doc. 12, Stip. 7.

15. During the ten months between the entry of the Sale Order and October 22, 2004, the Cooks never tendered the purchase price required to redeem the property to ESB or to the Second Judicial District Court registry. Doc. 12, Stip. 8; Doc. 42, Ex. G at 39:13–20.

16. The Cooks never tendered the redemption price before December 22, 2004, which was the date the redemption period, as extended by the bankruptcy filing, finally expired. Doc. 42, Ex. J at 99:17-18; 100:1-2; 100:21-25.

Cook has alleged additional facts, but the Court concludes that they are irrelevant to his claims against ESB.

## III.   ANALYSIS

The basis for all of Cook's claims is his legal contention that, by failing to inform Cook that it had deeded the foreclosed property to Spica Properties during the redemption period, ESB held itself out as the "owner" of the property, thereby "falsely representing" that it owned the property. Therefore, according to Cook, he was "never afforded a right to negotiate a redemption of the property from Spica as the only party who could legally convey the property" to him. Doc. 43 at

6. Cook contends that ESB's misrepresentation that it owned the property thereby caused him damages in "lost equity and pain and suffering." *Id.*; Doc. 12 at 5 ("Plaintiff conten[d]s that fraud was committed by Eastern Savings Bank preventing good faith negotiations for redemption of the Cook' home as Eastern Savings was not the owner. Plaintiff asserts they were damaged by the fraud of Eastern Savings Bank to the extent of the equity in the Cook' home."). Of course, the stipulated facts establish that Cook did, in fact, take advantage of several opportunities to extend the redemption period, thus he cannot show that he was damaged by not being aware that Spica legally owned the property during the redemption period.

Cook also claims that he was damaged because he paid money to ESB to extend the redemption period but that ESB could not legally extend the redemption period because it was not the legal owner of the property at that time. Cook's legal conclusions are erroneous. The right to extend the redemption period arose from the statute, *see* N.M.S.A. § 39-5-18 (limiting the statutory redemption period to nine months), from the mortgage contract between the Cooks and ESB, *see* N.M.S.A. 1978, § 39-5-19 ("The parties to any such instrument may, by its terms, shorten the redemption period to not less than one month, but the district court may in such cases, upon a sufficient showing before judgment that redemption will be effected, increase the period of redemption to not to exceed nine months notwithstanding the terms of such instrument."); and from the state-court Orders extending the one-month redemption period that was in the mortgage contract, *see* Doc. 42, Exs. E, F-1, F-2, & F-3. The right to redeem property sold at a foreclosure sale is a statutory right that may be modified by contract. *See* N.M.S.A. §§ 39-5-18, -19. "The right to redeem foreclosed property is a statutory right that our courts construe narrowly." *Chapel v. Nevitt*, 145 N.M. 674, 682, 203 P.3d 889, 897 (Ct. App. 2009) (internal quotation marks omitted). The

5

redemption statute in effect in 2004[1] provided:

> A. After sale of any real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former defendant owner of the real estate, his heirs, personal representatives or assigns or by any junior mortgagee or other junior lienholder:
>
> (1) by paying to the purchaser, his personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or
>
> (2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.
>
> B. Copies of the petition for redemption shall be served upon the purchaser of real estate under a foreclosure sale or his personal representatives or assigns.
>
> C. Any purchaser of real estate under a foreclosure sale or his personal representatives or assigns, upon being served with the petition for redemption of the property, shall answer the petition within thirty days after service of the petition.
>
> D. The hearing shall be governed by the rules of civil procedure. At the hearing, the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances. At the conclusion of the hearing, the district court may order the clerk of the court to issue the certificate of redemption upon such terms and conditions as it deems just.

---

[1] "The redemption statute was modified slightly by a 2007 amendment." *Chapel v. Nevitt*, 145 N.M. 674, 683 n.1, 203 P.3d 889, 898 n.1 (Ct. App. 2009). As in *Chapel* "because this cause of action arose prior to the effective date of the amendment to the statute, our analysis is based upon the language of the statute as it existed prior to the 2007 amendment." *Id.* Section (A)(1) was amended by deleting the words "his personal representatives or assigns." That amendment is insignificant, however, because the original statute used disjunctive language to permit payment to the purchaser, or to its personal representative, or to its assigns, demonstrating that payment of the redemption amount to any of the three would be effective to redeem the foreclosed property.

N.M.S.A. 1978 § 39-5-18.

Thus, under the redemption statute, Cook could redeem the foreclosed property only by paying the full redemption price to "the purchaser" *i.e.,* ESB *or* to its "assigns," *i.e.*, Spica; *or* by depositing that amount into the court registry. Because the right to redemption did not depend on ESB remaining as the *legal* owner of the property and it is undisputed that Cook never attempted to redeem the property by tendering the full redemption price to any entity or by depositing it into the court registry, as a matter of law Cook had no right to redemption. Therefore, ESB's alleged false representation that it remained the legal owner of the property during the redemption period was irrelevant. *See Brown v. Trujillo*, 135 N.M. 365, 372, 88 P.3d 881, 888 (Ct. App. 2004) (noting that "courts will not allow a debtor who is otherwise unable to pay the redemption amount to shield him or herself from losing property by merely asserting purchaser misconduct" and noting that courts will use its equity powers only "to protect a debtor who was ready, willing, and able to tender the redemption amount in accordance with the statute, but who failed to effect redemption *because of* the misconduct of a purchaser") (italics added). When ESB transferred the deed to the foreclosed property to Spica before the end of the redemption period, Spica was subject to the same statutory conditions as ESB - that is, Spica took title conditioned on Cook's right of redemption. *See West. Bank v. Malooly*, 119 N.M. 743, 749, 895 P.2d 265, 271 (Ct. App. 1995) (noting that purchasers at foreclosure sales buy the property "with the actual or implied knowledge that it was subject to redemption" and noting that N.M.S.A. 1978 § 39-5-18 "establishes a public policy in favor of permitting redemption from the *purchaser*") (italics added); *Plaza Nat'l Bank v. Valdez*, 106 N.M. 464, 466, 745 P.2d 372, 374 (1987) (holding that a redeemer "defeat[s] the title of the purchaser"). Had Cook simply paid the full redemption price to ESB as the purchaser or deposited it into the Court registry during the redemption period, ESB would have been obligated under the

state-court's December 16, 2003 and August 19, 2004 Orders to "execute and deliver a Special Master's Deed" to the Cooks. *See* Doc. 42, Ex. E at 3 & Ex. F-3 at 3. In addition, ESB or Spica would have been obligated by statute to also file a certificate of redemption acknowledging Cook's superior right to legal title to the property. *See* NMSA 1978 § 39-5-23 (requiring, "in all cases of redemption . . . it shall be the duty of the purchaser . . . or [his] assigns, or the clerk of the district court, as the case may be, to make out an instrument in writing ... evidencing such redemption, which shall be recorded in the office of the county clerk."). Thus, Cook's loss of the equity in his former property was caused not by any alleged misrepresentation regarding legal ownership, but by Cook's failure to even attempt to tender the redemption price during the redemption period.

Because Cook has not alleged any facts to show that ESB committed fraud or that he was harmed by any alleged misrepresentation regarding legal ownership of the property during the redemption period, ESB is entitled to judgment as a matter of law on his state-law claims for fraud, misrepresentation, malicious abuse of process, violations of the New Mexico Unfair Trade Practices Act, and prima facie tort.

**IT IS ORDERED** that ESB's *Motion for Summary Judgment* [Doc. 42] is GRANTED, and judgment in favor of ESB is granted on all of Cook's remaining claims.

_____
**UNITED STATES DISTRICT JUDGE**